U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 4 2016

CLERK, U.S. DISTRICT COURT
By _____ Deputy
TEXAS

# United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

| | |
|---|---|
| **In the Matter of the Search of**<br><small>(Name, address or Brief description of person, property or premises to be searched)</small> | **APPLICATION AND AFFIDAVIT<br>FOR SEARCH WARRANT** |

Premises known as:
2505 Miller Lane, Suites 106, 107, and 108
Pantego, TX 76013

**CASE NUMBER:** 3:16-MJ- 286-BK

I __Kyle Pacatte__ being duly sworn depose and say:

I am a(n) __Special Agent with the Internal Revenue Service-Criminal Investigation (IRS-CI)__ and have reason to believe that on the person of or __XX__ on the property or premises known as <small>(name, description and/or location)</small>

(SEE ATTACHMENT A).

in the __NORTHERN__ District of __TEXAS__ there is now concealed a certain person or property, namely (describe the person or property to be seized)

(SEE ATTACHMENT B).

**which is** <small>(state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)</small> property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, and is, otherwise, criminally possessed, **concerning a violation of Title __18__ United States code, Section(s) __287, 1028A, and 1343,__ . The facts to support a finding of Probable Cause are as follows:

(SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT KYLE PACATTE).
**Continued on the attached sheet and made a part hereof.** __XX__ Yes __ No

_Kyle Pant_
Signature of Affiant
Kyle Pacatte
Special Agent, IRS-CI

**Sworn to before me, and subscribed in my presence**

__April 4, 2016__ at 10:00 a.m.            at            __Dallas, Texas__
Date and Time                                                City and State

**RENÈE HARRIS TOLIVER**
**United States Magistrate Judge**
Name and Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

### FILED UNDER SEAL

I, Kyle Pacatte, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I make this affidavit in support of an application for a search warrant for 2505 Miller Lane, Suites 106, 107, and 108, Pantego, TX 76013 as described in Attachment A, incorporated herein by reference, to seize evidence and instrumentalities of these crimes, as described in Attachment B, incorporated herein by reference.

2.      I am a Special Agent employed by Internal Revenue Service, Criminal Investigation ("IRS-CI") and have served in this capacity since September 2009.  A Special Agent's duties include investigations of violations of Internal Revenue laws and related offenses, money laundering statutes, and Bank Secrecy Act requirements.  I received training in investigative techniques at the Federal Law Enforcement Training Center in Glynco, Georgia.  I also received specialized training in the investigation of violations of the Internal Revenue laws and related financial crimes, and have participated in investigations of these offenses and been the affiant on various warrants.  In addition to my experience as a Special Agent, I earned a Bachelor of Business Administration in Accounting concurrently with a Masters of Business Administration from the University of Texas at Arlington in 2003.  I am a Certified Public Accountant licensed in the state of Texas, and a Certified Fraud Examiner.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## Probable Cause

4.      This affidavit sets forth facts that support probable cause to believe that since at least 2014 and continuing through the present, Crystal Burrows ("Burrows") committed violations of Title 18 U.S.C. § 287 (False, Fictitious or Fraudulent Claims), Title 18 U.S.C. 1028A (Aggravated Identity Theft), and Title 18 U.S.C. § 1343 (Wire Fraud), and that evidence of these violations is now located within 2505 Miller Lane, Suites 106, 107, and 108, Pantego, TX. The information set out in this affidavit in support of issuance of a search warrant is derived from Internal Revenue Service ("IRS") return data provided by the IRS Scheme Detection Center in Austin, Texas; witness interviews; and other documents inspected during this investigation. This affidavit sets forth facts, and suggests reasonable inferences from those facts, that establish there is probable cause to believe that the records and documents described herein and set forth in Attachment B constitute evidence and instrumentalities of the federal offenses listed above.

## Background of Investigation

5.      Each year, taxpayers with a filing requirement have the option of either mailing their U.S. Individual Income Tax Return ("tax return") to the IRS or filing their tax return electronically with the IRS.  A taxpayer may prepare his/her own tax return using available software or hire a return preparer to prepare and electronically file the tax return.

6.      In order to electronically file tax returns with the IRS, a return preparer must complete an application process to become an authorized electronic filer of income tax returns.  Upon IRS approval, an Electronic Filing Identification Number ("EFIN") is assigned by the IRS to the requestor.  In addition, the IRS assigns preparer tax identification number ("PTIN") to register tax return preparers for identification purposes.  Multiple PTINs may be used under the same EFIN.

7.      In stolen identity refund fraud ("SIRF") schemes, tax returns are filed with the IRS using the personally identifiable information ("PII"), the name and a Social Security Number ("SSN"), of a victim by individuals not authorized to do so and without the knowledge of the victim.  Based on my training and experience, tax returns are typically filed with the IRS electronically in SIRF schemes.

## EFIN 807035 in 2014

8.      On October 29, 2014, Crystal Burrows was interviewed by Special Agent Brooke Tetzlaff and Special Agent Craig Clotfelter. Crystal Burrows is a return preparer and has utilized EFIN 807035 assigned to her since 2011.  Crystal

Burrows has her own preparer tax identification number ("PTIN"), but she could not recall the number. According to IRS records, PTIN P01589864 was issued to Crystal Burrows. In 2014, she had other preparers that worked with her preparing tax year 2013 returns that utilized EFIN 807035, but no one else knew her PTIN. So, according to Crystal Burrows, if a return has her PTIN on it, and it was filed with EFIN 807035, she prepared it. Crystal Burrows stated she personally met with, or knew from prior years, each client for which she prepared and transmitted a tax return.

9.      On March 30, 2015, KH[1] was interviewed by Special Agent Brooke Tetzlaff and Special Agent Craig Clotfelter. A 2013 tax return using the PII of KH was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the tax return is Crystal Burrows and the return included Crystal Burrow's PTIN, P01589864. KH does not know Crystal Burrows, and KH did not authorize Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on KH's behalf.

10.     On April 8, 2015, LM[2] was interviewed by Special Agent Brooke Tetzlaff and Special Agent Gail Cooper. A 2013 tax return using the PII of LM was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the tax return is Crystal Burrows and the return included Crystal Burrow's PTIN, P01589864. LM does not know Crystal Burrows, and LM did not authorize

---

[1] In order to protect the identity of this taxpayer, he/she will be identified by the initials "KH".
[2] In order to protect the identity of this taxpayer, he/she will be identified by the initials "LM".

Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on LM's behalf.

11.     On February 17, 2016, CE[3] was interviewed by Special Agent Kyle Pacatte, the affiant, and Tax Fraud Investigative Assistant Joshua Nick. A 2013 tax return using the PII of CE was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the tax return is Crystal Burrows and the return included Crystal Burrow's PTIN, P01589864. CE does not know Crystal Burrows, and CE did not authorize Crystal Burrows or anyone at the company listed on the tax return, Business IT Solutions, to file a return on CE's behalf.

12.     On March 2, 2016, KD[4] was interviewed by Special Agent Kyle Pacatte, the affiant, and Special Agent Brooke Tetzlaff. A 2013 tax return using the PII of KD was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the tax return is Crystal Burrows and the return included Crystal Burrow's PTIN, P01589864. KD does not know Crystal Burrows, and KD did not authorize Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on KD's behalf.

13.     On March 2, 2016, DH[5] was interviewed by Special Agent Kyle Pacatte, the affiant, and Special Agent Brooke Tetzlaff. A 2013 tax return using the PII of DH was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the tax return is Crystal Burrows and the return included Crystal

---

[3] In order to protect the identity of this taxpayer, he/she will be identified by the initials "CE".
[4] In order to protect the identity of this taxpayer, he/she will be identified by the initials "KD".
[5] In order to protect the identity of this taxpayer, he/she will be identified by the initials "DH".

Burrow's PTIN, P01589864.  DH does not know Crystal Burrows, and DH did not authorize Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on DH's behalf.

14.     On March 7, 2016, MG[6] was interviewed by Special Agent Kyle Pacatte, the affiant, and Special Agent Brooke Tetzlaff.  A 2013 tax return using the PII of MG was filed with the IRS in 2014 through EFIN 807035.  The preparer listed on the tax return is Crystal Burrows and the return included Crystal Burrow's PTIN, P01589864.  MG does not know Crystal Burrows, and MG did not authorize Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on MG's behalf.

15.     IRS tax return data indicates 2013 tax returns filed in 2014 through EFIN 807035 with PTIN P01589864 were filed via Sprint Internet Protocol ("IP") addresses.  According to records provided by Sprint, the IP addresses link to International Mobile Subscriber Identity ("IMSI") 310120020731729, which relates to Billing Account Number 72467045, in the name of Crystal Burrows.

16.     On or about January 15, 2015, EFIN 807035 was revoked by the IRS.

**EFIN 809084 in 2015**

17.     In 2015, Crystal Burrows operated using the business names Eight Lanes Financial and Maximum Returns and utilized EFIN 809084 assigned to Larry Gardner according to IRS return data.  Larry Gardner is the husband of

---

[6] In order to protect the identity of this taxpayer, he/she will be identified by the initials "MG".

Alicia Gardner. On November 3, 2015, Alicia Gardner was interviewed by Special Agent Brooke Tetzlaff, Special Agent Tracy Hojdea, and Special Agent Craig Clotfelter. Alicia Gardner and Crystal Burrows are friends. In 2015, Alicia Gardner and Larry Gardner allowed Crystal Burrows to use EFIN 809084 assigned to Larry Gardner to prepare 2014 tax returns. Crystal Burrows told Alicia Gardner that she had some sort of problem, and needed an EFIN to use.

18. On March 7, 2016, MG2[7] was interviewed by Special Agent Kyle Pacatte, the affiant. A 2013 tax return using the PII of MG2 was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the return is Crystal Burrows and the tax return included Crystal Burrow's PTIN, P01589864. MG2 does not know Crystal Burrows, and MG2 did not authorize Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on MG2's behalf. A 2014 tax return using the PII of MG2 was filed with the IRS in 2015 through EFIN 809084 and the preparer listed on the return is RDAYE. MG2 does not know RDAYE, and MG2 did not authorize RDAYE or anyone at the company listed on the return, Eight Lanes Financial, to file a tax return on MG2's behalf.

19. On February 16, 2016, LM2[8] was interviewed by Special Agent Kyle Pacatte, the affiant. A 2013 tax return using the PII of LM2 was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the tax return is

---

[7] In order to protect the identity of this taxpayer, he/she will be identified by the initials "MG2". MG2 is a different person than MG mentioned previously, but each have the same initials.
[8] In order to protect the identity of this taxpayer, he/she will be identified by the initials "LM2". LM2 is a different person than LM mentioned previously, but each have the same initials.

Crystal Burrows and the return included Crystal Burrow's PTIN, P01589864. LM2 does not know Crystal Burrows, and LM2 did not authorize Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on LM2's behalf. A 2014 tax return using the PII of LM2 was filed with the IRS in 2015 through EFIN 809084 and the preparer listed on the return is RDAYE. The tax return was rejected by the IRS. LM2 does not know RDAYE, and LM2 did not authorize RDAYE or anyone at the company listed on the return, Eight Lanes Financial, to file a tax return on LM2's behalf.

20.     On March 7, 2016, TS[9] was interviewed by Special Agent Kyle Pacatte, the affiant. A 2013 tax return using the PII of TS was filed with the IRS in 2014 through EFIN 807035. The preparer listed on the tax return is Crystal Burrows and the return included Crystal Burrow's PTIN, P01589864. TS does not know Crystal Burrows, and TS did not authorize Crystal Burrows or anyone at the company listed on the return, Business IT Solutions, to file a tax return on TS's behalf. A 2014 tax return using the PII of TS was filed with the IRS in 2015 through EFIN 809084 and the preparer listed on the return is RDAYE. TS does not know RDAYE, and TS did not authorize RDAYE or anyone at the company listed on the return, Eight Lanes Financial, to file a tax return on TS's behalf.

21.     The preparer listed as RDAYE is identified by the PTIN P01851251 as RaChalynn Daye. It is unknown if RaChalynn Daye prepared and filed the returns or if her identity is being used without her knowledge.

---

[9] In order to protect the identity of this taxpayer, he/she will be identified by the initials "TS".

22.     IRS return data indicates 2014 tax returns filed in 2015 through EFIN 809084 as discussed above, were filed via a Time Warner Cable IP address. According to records provided by Time Warner Cable, the IP address is for subscriber Newport Investments, located at address 2505 Miller Lane, Pantego, TX.

23.     On May 22, 2015, Brian Tally, owner of Newport Properties, was interviewed by Special Agent Brooke Tetzlaff.  Newport Properties owns and leases office space at 2505 Miller Lane, Pantego, TX.  Tally recognized a photo of Crystal Burrows as the person to whom he leases suites 106, 107, and 108. Maximum Returns is a tax preparation business that operates in suites 106 and 107.  Maximum Returns is owned by Crystal Burrows, according to the lease agreement.  Crystal Burrows also leased space for Eight Lanes Financial, another tax preparation business that operates in suite 108.  For suites 106 and 107, Crystal Burrows signed a two year lease which started December 1st 2014.  For suite 108, Crystal Burrows signed a two year lease which started February 1st 2015.  On May 26, 2015 Brian Tally told Special Agent Brooke Tetzlaff that wireless internet through Time Warner Cable is included in the rent.  As far as Brian Tally knows, there are no specific IP addresses assigned to any suite, and there are no other tax preparation businesses at 2505 Miller Lane, Pantego, TX.

24.     All 2014 tax returns discussed above show the preparation firm address as 2505 Miller Ln 106, Pantego, TX 76013.

25.     On or about November 23, 2015, EFIN 809084 was revoked by the IRS.

**EFIN 751845 in 2016**

26.     According to IRS return data, Crystal Burrows was shown as a preparer on tax returns submitted to the IRS in 2016 through EFIN 751845. EFIN 751845 is in the name of Tianna Hunnicutt.

27.     On March 17, 2016, Tianna Hunnicutt was interviewed by Special Agent Kyle Pacatte, the affiant, and Supervisory Special Agent Stephen Walker. Tianna Hunnicutt is the assistant manager at Maximum Returns located at 2505 Miller Lane, Pantego, TX in several suites. Maximum Returns is also known as Eight Lanes Financial. Andrea Riser is one of three main preparers for Maximum Returns. The other main preparers are Crystal, but Tianna Hunnicutt does not know Crystal's last name, and another black female that Tianna Hunnicutt does not know the name of. Andrea Riser told Tianna Hunnicutt that only a certain number of returns can be filed by each EFIN. Tianna Hunnicutt provided her fingerprints and completed EFIN paperwork to Andrea Riser in December 2015 with the understanding that Andrea Riser would use it to establish an EFIN with the IRS. Tianna Hunnicutt is supposed to be paid $100 per return that is transmitted through EFIN 751845 and accepted by the IRS. Special Agent Kyle Pacatte, the affiant, and Tianna Hunnicutt reviewed and confirmed the EFIN application for 751845 lists her name, SSN, and shows 2505 Miller Lane, #106, Pantego, TX 76013 as the address. As of March 17, 2016, Tianna Hunnicutt had

not received any money for the use of EFIN 751845.  Tianna Hunnicutt was last at

the offices located at 2505 Miller Lane, Pantego, TX the week of March 7, 2016.

Tianna Hunnicutt estimates there are three desktop computers, and twelve or

thirteen laptops being used in the neighboring office suites to prepare tax returns.

28.     On March 23, 2016, BJ[10] was interviewed by Special Agent Kyle

Pacatte, the affiant, and Special Agent Craig Clotfelter.  A 2015 tax return using

the PII of BJ was filed with the IRS in 2016 through EFIN 751845 and the

preparer listed on the tax return is Sharoldean Weathered.  BJ does not know

Sharoldean Weathered, and BJ did not authorize Sharoldean Weathered or anyone

at the company listed on the return, Maximum Returns, to file a tax return on BJ's

behalf.

29.     On March 23, 2016, DH[11] was interviewed by Special Agent Kyle

Pacatte, the affiant, and Special Agent Craig Clotfelter.  A 2015 tax return using

the PII of DH was filed with the IRS in 2016 through EFIN 751845 and the

preparer listed on the return is Sharol Weathered.  DH does not know Sharol

Weathered, and DH did not authorize Sharol Weathered or anyone at the company

listed on the return, Maximum Returns, to file a tax return on DH's behalf.

30.     On March 24, 2016, MP[12] was interviewed by Special Agent Kyle

Pacatte, the affiant.  A 2015 tax return using the PII of CP was filed with the IRS

in 2016 through EFIN 751845 and the preparer listed on the return is Sharol

---

[10] In order to protect the identity of this taxpayer, he/she will be identified by the initials "BJ".
[11] In order to protect the identity of this taxpayer, he/she will be identified by the initials "DH".
[12] In order to protect the identity of this taxpayer, he/she will be identified by the initials "MP and CP".

Weathered.  MP is the mother and legal guardian of CP.  CP is disabled and has limited verbal skills.  MP does not know Sharol Weathered, and neither MP nor CP authorized Sharol Weathered or anyone at the company listed on the return, Maximum Returns, to file a tax return on CP's behalf.

31.     The preparer listed as either Sharol or Sharoldean Weathered is identified by PTIN P01852447 as Sharoldean Weathered.  IRS Return data shows that returns filed in 2016 using the same PTIN, P01852447, list Crystal Burrows as the preparer, not Sharol or Sharoldean Weathered.  It is unknown if Sharoldean Weathered prepared and filed the returns described above or if her identity is being used without her knowledge.

## **Computer Evidence**

32.     Based on my training and experience, I know that when an individual uses a computer to file a tax return with the IRS, the computer the individual used will generally serve both as an instrumentality for committing the crime, and also as a storage device for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage device for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.  Portable electronic devices such as certain

cellular phones and tablet computers are capable of filing electronic tax returns with the IRS.

33.     I have consulted with IRS-CI Special Agent Araceli Lagos regarding the aspects of properly retrieving and analyzing electronically stored computer data.  Special Agent Lagos has been employed with IRS-CI for more than fourteen years.  In addition to attending training in financial investigation techniques and accounting, she has also attended the IRS-CI Seized Computer Evidence Recovery School at the Federal Law Enforcement Training Center in Glynco, Georgia, where she learned about the operation of computer systems and the correct procedures for seizure and analysis of computer systems.  Special Agent Lagos has participated in many search warrants during which she has seized or imaged numerous computers, electronic memory devices, cell phones, and smart phones and has been responsible for analyzing seized electronic data and records from those systems.

34.     Based upon the affiant's consultation with Special Agent Lagos, I know that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips, flash drives, thumb drives, personal digital assistants, smart phones, and cellular telephones.  I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a.  Searching computer systems is a highly technical process, which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

b.  Searching computer systems requires the use of precise, scientific procedures, which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

c.  The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to

search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 160 gigabytes (GB) of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 80 million pages of data, which, if printed out, would result in a stack of paper over four miles high. Further, a 160 GB drive could contain as many as approximately 150 full run movies or 150,000 songs.

d.  Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called

"steganography." For example, by using steganography a computer user can conceal text in an image file, which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

e. In light of these concerns, your affiant hereby requests the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct off-site imaging of the hardware, if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to image the computer hardware on-site.

f. The terms "records", "documents", and "materials" as used above include all of the items of evidence more fully described in Attachment B in whatever form and by whatever means such records, documents, or materials, their drafts, or their modifications may have been created or stored, including, but not limited to any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any electrical or magnetic

form (such as tape recording, cassettes, compact disks); and/or any information on an electronic or magnetic storage device (such as floppy diskettes, hard drives, backup media, disk cartridges, CD-ROMs, optical disks, smart cards, flash or thumb drives, smart phones, personal digital assistants, cellular telephones, or electronic notebooks); as well as printouts or readouts from any magnetic storage device.

35. Based upon the affiant's consultation with Special Agent Lagos, I know that cell phones, smart phones, and PDA's can contain the following types of information on internal memory of the device or an attached SIM card and/or SD memory card or chip: phone numbers, addresses, personal identifying information, call logs for inbound and outbound calls, missed call logs, dialed call logs, recent call logs, communication files, voice mail, emails and email account information, digital images, buddy lists, SMS/MMS text messages, passwords, GPS information, SD memory cards and chips, and SIM cards. Your affiant hereby requests the Court's permission to seize, process, and analyze all cell phones, smart phones, PDA's and related attached SIM cards, memory cards and chips.

## Conclusion

36. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that Crystal Burrows has committed various federal offenses, including violations of Title 18 U.S.C. § 287

(False, Fictitious or Fraudulent Claims),  Title 18 U.S.C. 1028A (Aggravated

Identity Theft), and Title 18 U.S.C. § 1343 (Wire Fraud).  Additionally, probable

cause exists to believe records and documents described in Attachment B

constitute evidence and instrumentalities of these crimes and that such records and

documents are located at 2505 Miller Lane, Suites 106, 107, and 108, Pantego, TX

76013.

37.    The issuance of a search warrant to search the locations described in

Attachment A and to seize items listed in Attachment B, is requested.


_____

Special Agent Kyle Pacatte
IRS- Criminal Investigation

Sworn to and subscribed before me on this _____ day of March, 2016

RENÉE HARRIS TOLIVER
United States Magistrate Judge
Northern District of Texas

Attachment A

## Locations to be Searched:

## 2505 Miller Lane, Suites 106, 107, and 108
## Pantego, TX 76013

The locations to be searched are located within a beige one story office complex located at 2505 Miller Lane, Pantego, TX 76013.   The entrance near the southeastern corner of the building has 2505 in white numbers at the top of the door.   The building contains office suites occupied by a variety of separately controlled businesses.   Suites 106, 107, and 108 are leased to entities associated with Crystal Burrows according to the lessor.



**Attachment B**

**Items to be seized:**

Based on the foregoing Affidavit, the following items to be seized are those records related to the U.S. Individual Income Tax Returns, including all attached schedules[1] prepared at Eight Lanes Financial and/or Maximum Returns prepared by Crystal Burrows or any of her associates, covering the tax periods 2013, 2014, and 2015 in digital or print form.  These records will be comprised of papers, documents, and any other data or materials, either found physically, or stored electronically in the seized computers and all digital devices found on the premises listed below:

1.  The following documents reflecting preparation of tax returns, to include: client files, records of clients names and addresses, original and or complete copies of client federal income tax returns, for the tax years 2013, 2014 and 2015(Forms 1040, 1040A, 1040EZ, 1040PC, 1040X, and electronically filed versions of same), together with all forms, schedules and attachments thereto. The seizure of these documents is necessary in order to identify which tax returns were prepared by Crystal Burrows or at her direction.

2.  All records relating to tax return preparation, worksheets and/or supporting

---

[1] Schedule A, Schedule B, Schedule C, Schedule D, Form 8863, and others.

documentation used in the preparation of tax returns; records identifying the taxpayers for whom these returns have been prepared; invoices, receipts or other records relating to tax consulting or preparation fee charged, tax preparation software, tax forms and instructions, copies of tax returns prepared for customers, tax return preparation instructions, etc.

3. Records reflecting the amount of income tax refunds claimed or received on client tax returns. U.S. Treasury checks (tax refunds), Refund Anticipation Loan (RAL) applications, RAL checks, check stubs, check receipts, check inquiries, invoices, debit cards, etc. including the amounts of refunds which these clients claimed and/or received for the tax years 2013, 2014, and 2015.

4. Questionnaires, reflecting the characteristics of the tax returns in the aforementioned affidavit, prepared by or for clients prior to the preparation of any false or fraudulent returns for the tax years 2013, 2014, and 2015.

5. Forms of identification reflecting names, addresses, or telephone numbers of tax business associates or clients.

6. Correspondence relating to tax returns, to or from the IRS, or other taxing entities in digital or print form.

7. Correspondence from taxpayers or other unknown individuals relating to tax return preparation, in digital or print form.

8. Email or text records related to the scheme including tax return preparation information, and or communications discussing the scheme.

9. Bank and/or financial records related to the preparation fees associated with the tax return preparation including bank statements, cancelled checks, deposit tickets, wire transfer records, debit and credit card information, cashier's checks, debit cards or money order records. This includes bank records in the name of Eight Lanes Financial, Maximum Returns, or other entities and Crystal Burrows' personal bank account records for the tax years within the scope of this warrant (2013-2015).

10. Crystal Burrows' personal financial records for the tax years 2013-2015, including any copies of tax returns in digital or print form, or any drafts of such records.

11. Internet service provider and IP address information associated with tax return preparation, cell phone service provider and billing and call detail records, and internet search history for all computers and electronic devices.

12. All computers, computer hard drives, and data information stored on computers, electronic files, disks and software which contain information requested located in the area of the business and under the control of C or her associates. Computer items to be seized include the following:

a. Computers and computer hardware consisting of all equipment which can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes:

   i. data-processing devices such as central processing units, memory typewriters, personal digital assistant/electronic organizer, cellular telephones, and self-contained "laptop" or "notebook" computers;

   ii. internal and peripheral storage devices such as fixed disks, backup tapes, flash/thumb drives, smart cards, external hard disks, floppy disk drives and diskettes; peripheral input/output devices such as keyboards, printers, scanners, video display monitors and optical readers:

   iii. Related communications devices such as modems, cables, and connections; as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locks, and the contents thereof.

b. Computer software that includes digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form, including programs to run operating systems and applications such as:

   i. Word-processing programs

   ii. Graphics programs

   iii. Spreadsheet programs

   iv. Utilities

     v.  Compilers

    vi.  Interpreters

   vii.  Communications programs

  viii.  Tax preparation programs, forms and instructions

c.  Computer-related documentation of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

     i.  Computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices that consist of hardware, software, or other programming code. Data security hardware may include encryption devices, chips, and circuit boards.  Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

d.  In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and

attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.